## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DRIVERDO, LLC, *doing business as Draiver*,

      Plaintiff/Counterclaim Defendant,

      v.

SLALOM, INC. *doing business as Slalom Consulting*,

      Defendant/Counterclaimant.

Case No. 24-2249-EFM-RES

## MEMORANDUM AND ORDER

Defendant/Counterclaimant Slalom, Inc. d/b/a Slalom Consulting ("Defendant" or "Slalom") has filed a Motion to Amend Scheduling Order and for Leave to Amend its Counterclaims. ECF No. 77. Plaintiff/Counterclaim Defendant Driverdo, LLC d/b/a Draiver ("Plaintiff" or "Draiver") has filed a response in opposition, ECF No. 81, and Defendant has filed a reply in further support of the Motion. ECF No. 82. For the reasons explained below, the Motion is denied.

## I.    BACKGROUND

### A.    Plaintiff's Complaint and Defendant's Original Counterclaims

Highly summarized, Plaintiff contracted with Defendant to provide consulting, technical, and other professional services pursuant to a consulting services agreement ("CSA"). *See generally* ECF No. 1-1 (state court petition). According to Plaintiff, the CSA required Defendant to provide certain services pursuant to each statement of work ("SOW"), and any amendments to an SOW were to be made via a change order ("CO"). *Id.* at 2-3. Plaintiff asserts two causes of

action: Count I, a breach of contract claim for alleged breaches of the CSA, two SOWs (SOW1 and SOW2) and two COs (CO1, CO2); and Count II, a declaratory judgment claim. *Id.* at 14-17.

Defendant filed its Notice of Removal on June 13, 2024. ECF No. 1. On July 5, 2024, Defendant filed its original Answer and Counterclaims. ECF No. 12. Defendant's Answer asserted various defenses and eight counterclaims, including for breach of contract (Counterclaims I-III), fraud (Counterclaim IV), declaratory judgment (Counterclaim V), breach of the duty of good faith and fair dealing (Counterclaim VI), unjust enrichment (Counterclaim VII), and quantum meruit (Counterclaim VIII). *See id.*

### B.    Original Scheduling Order

On July 9, 2024, the Court entered an Initial Order Regarding Planning and Scheduling. ECF No. 13. Among other deadlines, this Order set a July 24, 2024 deadline for the parties to hold a Rule 26(f) planning conference, which means that discovery opened no later than July 24, 2024. *See id.*; *see also* Fed R. Civ. P. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" except in other limited circumstances). On August 1, 2024, after the deadline for the parties to hold their planning conference, the parties filed a joint motion to stay the litigation for 90 days pending an anticipated mediation, which the Court denied because the motion did not establish good cause to extend or stay any deadlines. ECF Nos. 16-17. On August 6, 2024, the parties filed an amended joint motion providing greater specificity about the parties' mediation plans. ECF No. 18. The Court granted the amended motion and stayed the case until October 24, 2024, ECF No. 19, which means that discovery in this litigation again reopened on October 25, 2024.

On November 20, 2025, the Court held a scheduling conference and subsequently entered a Scheduling Order. ECF Nos. 22, 24. As is relevant to the present Motion, the Scheduling Order

established a deadline of December 18, 2024, for any motions to amend the pleadings and December 11, 2024, for Plaintiff to answer or otherwise respond to Defendant's Counterclaims. ECF No. 24 at 2. The Scheduling Order also imposed the following additional deadlines: June 27, 2025, for the close of all discovery; July 11, 2025, for submission of the pretrial order; July 23, 2025, for the final pretrial conference; and August 15, 2025, for filing dispositive motions and motions to exclude expert witness testimony. *Id.*

On December 11, 2025, Plaintiff filed a motion to dismiss only Counterclaims II-VIII. ECF No. 25. That same day, Plaintiff filed its answer to Defendant's Counterclaims. ECF No. 27.

### C.    Amended Scheduling Orders

The parties subsequently filed a motion to amend the scheduling order on May 16, 2025, which the Court denied without prejudice because it did not establish good cause for the entirety of the extensions requested and because it failed to provide a confirmed plan for how all outstanding discovery would be completed within any proposed extended timeframe. ECF Nos. 47-48. The parties filed a renewed motion on May 28, 2025, which the Court subsequently granted. ECF Nos. 49-50. The Amended Scheduling Order extended the close of discovery to August 15, 2025; extended the deadline to submit a proposed pretrial order to August 29, 2025; reset the final pretrial conference for September 9, 2025; and extended the deadline for filing dispositive motions and motions to exclude expert testimony to October 3, 2025. ECF No. 50 at 2. The parties did not request—and the Court did not extend—the deadline for filing motions to amend the pleadings, which had passed long before the parties moved to amend the Scheduling Order.

On August 15, 2025, the day discovery closed, the parties filed an untimely joint motion

for a 10-day extension of time to complete discovery. *See* ECF No. 63 (motion); *see also* ECF

No. 65 (order finding that the motion failed to comply with D. Kan. Rule 6.1(a), which requires

that "[a]ll motions for an extension of time to perform an act required or allowed to be done within

a specified time must be filed as soon as practicable and in no event less than 3 days before the

specified time."). In relevant part, the motion stated:

> During the deposition of Draiver's CFO Arthur Sindoni on August
> 6, 2025, Mr. Sindoni testified about documents that Draiver had not
> yet produced. Draiver subsequently produced additional
> documents, and has agreed to make Mr. Sindoni available for a
> further deposition limited to those documents, and issues implicated
> by them. Mr. Sindoni also cited Draiver's September 2023 revenue
> totals in testimony regarding a subset of Draiver's claimed damages.
> Draiver has compiled revenue totals for September 2023 and the
> months immediately preceding and proceeding, and anticipates
> formally producing this document before discovery closes.
>
> [] During the deposition of Slalom Managing Director WD Land on
> August 14, 2025, Mr. Land was unprepared to discuss an aspect of
> Topic 22 of Draiver's 30(b)(6) deposition notice because, Slalom
> contends, Slalom did not anticipate Topic 22 would encompass a
> particular line of questioning. Slalom has agreed to a follow-up
> deposition of a Slalom representative to address aspects of Topic 22
> about which Mr. Land was unprepared to testify.

ECF No. 63 at 2-3. The Court granted in part and denied in part the motion, extending the

discovery deadline up to and including August 25, 2025, for the sole purpose of allowing "the

parties time to conduct limited clean-up discovery following the Fed. R. Civ. P. 30(b)(6)

depositions referenced in the Motion." ECF No. 65.

On August 26, 2025, just three days before the deadline to submit a pretrial order, the

parties filed a joint motion requesting 15-day extensions of the deadline to submit a pretrial order,

the date of the final pretrial conference, and the deadline to file dispositive motions and motions

to exclude expert testimony.  ECF No. 67.  That same day, Defendant filed its first motion to amend its counterclaims.  ECF No. 68.

### D.    Motion to Dismiss Order

On September 5, 2025, the District Judge issued an Order granting in part and denying in part Plaintiff's motion to dismiss Defendant's Counterclaims II-VIII.  ECF No. 72.  The Order dismissed Counterclaims IV, VI, VII and VIII and denied the motion to dismiss Counterclaims II, III, and V.  *Id.* at 18.  Following this Order, on September 8, 2025, the Court denied Defendant's first motion for leave to amend its counterclaims because the order on the motion to dismiss impacted some claims Defendant sought to amend.  ECF No. 73.

### E.    Current Motion to Amend

On September 19, 2025, Defendant filed a Renewed Motion to Amend Scheduling Order and for Leave to Amend its Counterclaims.  ECF No. 77.[1]  Defendant seeks to extend the deadline to file motions to amend to render the present motion timely and seeks leave to amend its counterclaims to reassert the fraud claim that was dismissed by the District Judge, to add additional facts, and to add additional information regarding its request for attorney's fees.  *See generally id.*; ECF No. 79 (the proposed amended complaint reflecting changes in redline).

Defendant alleges that there is good cause to amend the scheduling order to allow it to file the Answer, Affirmative Defenses and First Amended Counterclaims because "its amendment is based on depositions of Draiver's corporate and fact witnesses conducted in August 2025, and documents Draiver produced between July 24, 2025, and August 15, 2025."  ECF No. 77 at 2.  In

---

[1]    The proposed amended complaints attached to the first and second Motions to Amend are substantially similar.  *Compare* ECF No. 68-2 *with* ECF No. 79.  The primary change appears to be that the proposed amended complaint attached to the second Motion also seeks to delete Counterclaims VI, VII, and VIII, consistent with the order on the motion to dismiss.  ECF No. 79.

addition to dismissing Counterclaims VI-VIII consistent with the Court's order on the motion to dismiss, ECF No. 79 at 20-22, Defendant's proposed amendments seek to: change some of its factual allegations regarding Plaintiff's purported cash-flow issues, *id.* at 10-11; add facts to Counterclaim I relating to Plaintiff's termination of certain contracts and its bases for withholding payments, *id.* at 14-16; add a specific demand for attorney's fees under the bad faith exception to the American Rule, *id.* at 17; and amend Counterclaim IV, its fraud claim, *id.* at 18-20.

## II.    LEGAL STANDARD

When a party moves to amend the pleadings after the deadline established in the scheduling order, as is the case here, the moving party must demonstrate "(1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). "Rule 16(b)(4) is arguably more stringent than Rule 15, permitting scheduling order amendments only for good cause and with the judge's consent." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019-20 (10th Cir. 2018) (quoting *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1195 (10th Cir. 2015) (internal quotation omitted)); *see also Seale v. Peacock*, 32 F.4th 1011, 1031 (10th Cir. 2022) (referencing that the Rule 16 "good cause standard is a more difficult standard" than the Rule 15 standard). If the movant does not establish good cause under Rule 16(b)(4), the Court must deny the motion and need not consider the second step of the analysis—whether to permit amendment under Rule 15. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019); *see also Gorsuch, Ltd., B.C.*, 771 F.3d at 1241 (characterizing the showing of good cause as "the threshold inquiry to consider whether amendments should be allowed after a scheduling order deadline has passed").

Federal Rule of Civil Procedure 16(b)(4)'s good-cause standard "requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240 (brackets in original) (internal quotations omitted).  A party may satisfy this standard, for example, if it learns of new information through diligent discovery efforts or if the underlying law has changed.  *See id.*  Nevertheless, if a party knows of the conduct underlying the amendment but simply fails to raise the claims, they are barred.  *Id.*

Federal Rule of Civil Procedure 15(a) provides that unless an amendment is allowed as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  The Rule further instructs that courts should "freely give leave when justice so requires."  *Id.*  A court may deny a motion to amend on the grounds of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[T]he decision to grant or deny a motion to amend is committed to the sound discretion of the trial court[.]" *Husky Ventures, Inc.*, 911 F.3d at 1019.

Because Defendant seeks to file an amended pleading well past the December 18, 2024 deadline to amend the pleadings, the Court begins by analyzing whether Defendant has shown that it could not meet the scheduling order deadline despite its diligent efforts. For the reasons explained below, the Court finds that Defendant has not established good cause under Rule 16(b)(4) and denies the Motion on this basis.  But even if the Court were to find good cause, the Court would deny this Motion pursuant to Rule 15(a)(1) because Plaintiff has established

Defendant's undue delay and Plaintiff would be unduly prejudiced if the Court allowed the amended pleading.

## III.    GOOD CAUSE UNDER RULE 16(B)(4)

### A.    Defendant's Diligence

Defendant states that it learned the basis for its proposed amendment through documents produced on July 24, 2025, and August 15, 2025, and depositions taken on August 6, 2025, and August 18-19, 2025.  ECF No. 77 at 6-8.  Defendant alleges that upon obtaining this information, it moved diligently to amend its counterclaims by filing its original motion on August 26, 2025. *See generally id.*

But Defendant's burden to establish its diligence is not satisfied merely by stating when it learned of the purportedly new information.[2]  "It is not enough to simply point to new information learned after the deadline for amendments" to demonstrate that the deadline could not be met

---

[2]        Defendant cites three cases from the District of Kansas for the proposition that Rule 16(b)(4)'s good-cause standard is satisfied where an amendment is based on deposition testimony that reveals for the first time the factual basis for the amendment and where the parties promptly moved to amend.  *See* ECF No. 77 at 5.  All these cases predate the Tenth Circuit's above-cited ruling in *Husky Ventures, Inc.*, filed on December 18, 2018.  *See id.* (citing *Kuri v. Addictive Behav. Change Health Grp.*, LLC, No. 16-2685-JAR, 2018 WL 8221667, at *1 (D. Kan. July 3, 2018); *Coder v. Am. Bankers Ins. Co. of Fla.*, No. 12-2231-EFM, 2013 WL 2151583, at *1 (D. Kan. May 16, 2013); *Pouncil v. Branch L. Firm*, No. CIV.A. 10-1314-JTM, 2011 WL 5837230 (D. Kan. Nov. 21, 2011)).  Two of these cases were decided more than a decade ago, at a time before the Tenth Circuit made clear that a party moving to amend after a scheduling order deadline must establish good cause and explained what that standard means.  *See Coder*, 2013 WL 2151583, at *1 (explaining that, at that time, the Tenth Circuit had not yet decided whether the good-cause standard applied to untimely requests to amend); *Pouncil*, 2011 WL 5837230, at *1 (same).  Even though both cases considered the good-cause standard, their articulation of what the standard means is of limited helpfulness considering more recent binding Tenth Circuit authority.

Although *Kuri* was decided after the Tenth Circuit made clear that the moving party must demonstrate good cause for an untimely motion to amend, it was decided prior to *Husky Ventures*, Inc.  Moreover, the case limits its discussion of good cause to a footnote because it appears the issue was taken up during a final pretrial conference.  *See Kuri*, 2018 WL 8221667, at *1 ("For the reasons set forth below *and at the pretrial conference*, plaintiff's motion to amend is granted." (emphasis added)).

despite diligent efforts. *Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *2 (D. Kan. Aug. 31, 2020). Rather, the moving party must "act with reasonable diligence in unearthing—through the customary tools of discovery—the ostensibly 'newly discovered evidence' . . . that allegedly justified the motion to amend." *Husky Ventures, Inc.*, 911 F.3d at 1021 (also citing with approval the district court's statement that "even if this motion is predicated on information that was not in hand . . . until a month ago, these are matters that could have and . . . should have been discovered far before that and long before that."). In other words, "in considering whether 'good cause' excuses compliance with a scheduling order deadline, the district court *must* examine whether the movant had been diligent, though unsuccessful, in attempting to acquire the information that would have formed the basis of a timely motion to amend[.]" *Id.* (quoting *Cook v. Howard*, 484 F. App'x 805, 818-19 (4th Cir. 2012) (emphasis in original)).[3] Because of this, a "lack of diligence can include a [movant's] failure to seek the information it needs to determine whether an amendment is in order." *Id.* at 1022 (quoting *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009)).

The relevant question then is whether Defendant moved diligently throughout the entire discovery period to obtain the information it ultimately learned at the end of the discovery period, which Defendant contends forms the ground for the amendments. Defendant has not established that it did.

---

[3]    *See also Smith v. Wyndham Vacation Ownership, Inc.*, No. 4:24-CV-00040-DN-PK, 2025 WL 1697383, at *3 (D. Utah June 17, 2025) ("Thus, if a movant could have discovered the relevant facts earlier through other discovery methods, a finding of good cause is not supported." (citation omitted)); *Olson v. GrowGeneration Corp.*, No. 22-CV-02897-NYW-KAS, 2024 WL 3634948, at *3 (D. Colo. June 22, 2024) ("However, if the movant could have discovered the relevant facts earlier or failed to perform the research necessary to recognize an applicable claim, that does not support a finding of good cause."), *R.& R. adopted*, No. 22-CV-02897-NYW-KAS, 2024 WL 3634884 (D. Colo. July 9, 2024).

Defendant's proposed repleaded fraud claim asserts that Plaintiff's former CEO represented to Defendant that it had cash-flow problems and needed to extend Defendant's payment obligations but that those representations were false. *See* ECF No. 79 at 19, ¶ 115. Those allegations regarding the cash-flow problems appeared in Defendant's original Answer and Counterclaims, filed more than a year ago on July 5, 2024. ECF No. 12. Specifically, Defendant pleaded "[u]pon information and belief, Draiver faced near constant pressure from its outside investor to minimize its cash burn." ECF No. 12 at 20, ¶ 49. By asserting this based upon information and belief, Defendant effectively acknowledged that discovery would be necessary to attempt to support this allegation. Defendant does not address what efforts it undertook throughout the discovery period to specifically investigate and confirm Plaintiff's alleged cash-flow problems and when such efforts occurred.

But to the extent there was any doubt that discovery was needed to support this allegation, on December 11, 2024, Plaintiff filed its Answer and Affirmative Defenses to Defendant's Counterclaims. ECF No. 27. Plaintiff denied the allegations in paragraph 49, characterizing them as "speculation and conjecture." ECF No. 27 at 9. Again, Defendant never explains what discovery it immediately undertook in December 2024 to investigate this denial.

Instead, it appears that Defendant waited until February 18, 2025, to serve its First Interrogatories and First Requests for Production ("RFPs"). ECF No. 45 (certificate of service). Defendant does not explain this delay—particularly since discovery re-opened no later than October 25, 2024, when the stay ended. ECF No. 19. The docket does not reflect any attempt by Defendant to serve any written discovery on the issues Defendant had pleaded on information and belief from the outset and in advance of the December 18, 2024 deadline to amend the pleadings or within those three-plus months after discovery opened.

Instead, Defendant points to Plaintiff's internal Slack communications, produced on July 24, 2025, as discovery triggering Defendant's proposed bad-faith exception amendment, but Defendant fails to provide sufficient information for the Court to conclude that Defendant could not have discovered the relevant facts sooner despite diligent efforts.  ECF No. 77 at 6-8. Specifically, Defendant alleges that "Draiver made an initial document production on April 15, 2025, and eventually produced documents in thirteen volumes, culminating with its production of volume 13 on August 25, 2025.  On July 24, 2025, Draiver produced Vol007, including internal Draiver Slack communications.  Draiver_011883, . . . was among those documents."  *Id.* at 3. Defendant does not explain if and when it served document requests to which these documents were responsive, and the record does not reflect why Plaintiff's documents were not served earlier than April 15, 2025, nearly six months after discovery reopened.

But even if Defendant had timely requested relevant discovery, Defendant failed to timely raise any discovery disputes with the Court regarding the purported delays in obtaining responsive information.  For example, in the parties' renewed joint motion to amend the scheduling order, filed on May 28, 2025, the parties stated that written discovery of "Internal Slack messages" remained to be produced by Plaintiff.  ECF No. 49 at 4.  The parties stated that they were diligent in attempting to exchange discovery, but Plaintiff was required to upgrade its subscription "in order to export these messages into a format that meets Slalom's needs."  *Id*.  A similar concern was raised in a prior motion seeking to modify the Scheduling Order, in which the parties referenced a "discovery challenge" involving the "[i]dentification of product licensing enhancements required to produce requested material and subsequent coordination on production," presumably referencing the same issue.  ECF No. 47 at 2.  According to the present Motion, those

internal Slack communications were not produced until July 24, 2025, and Draiver supplemented its production with a spreadsheet on August 15, 2025. ECF No. 77 at 3-4.

D. Kan. Rule 37.1(c) is intended to avoid the exact situation that has occurred here—namely that there were ongoing challenges and delays with the production of responsive documents and information that were not timely raised with the Court. Again, if there were ongoing issues with Plaintiff's production of responsive documents and information, Defendant was obligated to timely bring those issues to the Court for resolution, but Defendant never requested a discovery conference.

Defendant instead focuses on a single document, Draiver_011883, which was produced on July 24, 2025. ECF No. 77 at 3. This document is described as a "Slack message from January 11, 2024, appearing to attach a document titled 'Discrepancies_Slalom,'" an Excel file Draiver had not yet produced." *Id*. at 3-4.[4] While Defendant has attempted to explain challenges related to Plaintiff's production of Slack-related documents, neither side explains why this Excel spreadsheet, which presumably originated outside of Slack, was not produced earlier. For example, Defendant has not informed the Court when it first sought this information via a request for production ("RFP"), what the RFP requested, when the response was due, and what efforts Defendant undertook to press for compliance with the RFP in light of Defendant's decision not to request a discovery conference regarding any document-production issues.

---

[4]    In Defendant's proposed amendments, Defendant states the "Discrepancies_Slalom" spreadsheet was attached to an email. ECF No. 79 at 15 ("On January 10, 2024 . . . Draiver's CFO, Arthur Sindoni, sent an email to Kevin Burke at Draiver attaching a spreadsheet entitled: "Discrepancies_Slalom[.]") The record is not clear when this email was produced or whether it attached the same version of the spreadsheet that was attached to the Slack message referenced in the Motion. The Slack message referenced as a catalyst for the present Motion is not referenced in Slalom's proposed amendments. *See generally* ECF No. 79.

On August 15, more than three weeks later, Plaintiff purportedly produced "a version" of the referenced Excel spreadsheet. *Id.* at 4. Defendant then alleges that based in part on the information contained in this Excel spreadsheet, "[d]uring his deposition on August 19, 2025, Draiver's current CEO, Federico Ranero, acknowledged that Draiver knew, when it terminated Slalom's contract, that it would have to pay Slalom for the work Slalom had performed." *Id.* at 7. Again, even if this were wholly new information, Defendant fails to establish its diligence in obtaining this information for all of the above reasons.

Finally, Defendant does not allege it ever served interrogatories or requests for admissions related to any of the discovery that Defendant states triggered the motion to amend. Similarly, Defendant does not allege it took a single deposition in advance of August 5, 2025, ten days before the amended deadline to complete all discovery. ECF No. 54 (Defendant's first deposition notice). In the parties' first joint motion for leave to modify the scheduling order, the parties stated that they "must first complete written discovery before conducting any necessary depositions." ECF No. 47 at 3. In the May 16, 2025 Order denying that motion, the Court specifically cautioned the parties about delaying depositions and instructed the parties to "discuss the earliest available dates for all remaining depositions, rather than delaying remaining depositions until August." ECF No. 48.

In their renewed joint motion for leave to modify the scheduling order, the parties again stated that they "must first finalize and analyze all written discovery before conducting any necessary depositions," but anticipated that depositions could "begin the week of July 21, 2025." ECF No. 49 at 4-5. Despite the Court's warning and despite the parties' representation that they anticipated depositions would start in July, the docket reflects that depositions were taken between August 5, 2025, and August 19, 2025.

Defendant could have, but choose not to take depositions earlier in the discovery period. It is not surprising or unforeseeable that Defendant could learn new information or clarify existing allegations when it begins to take depositions in a lawsuit—that is indeed the entire purpose of discovery. Defendant does not cite to any authority that Rule 16's good cause standard is satisfied by electing to delay all depositions until the waning weeks of discovery. Defendant has failed to establish that it acted with diligence in attempting to discover the information that it argues triggers the amendment. Because Defendant has failed to demonstrate good cause, the Motion is denied on this basis alone.

**B.    Defendant's Specific Amendments**

But even if Defendant had established that it acted with diligence in attempting to discover this new information—which it has not—Defendant has not established that the entirety of the proposed amendments are based on this purported new information. To illustrate this point, the Court individually discusses the proposed amendments below.[5]

**1.    ECF No. 79, paragraphs 49-51**

In addition to deleting paragraph 49, Defendant seeks to amend paragraphs 50 and 51. ECF No. 79 at 10. But paragraphs 50 and 51 discuss communications between Defendant and Plaintiff in 2023. *See id.* at 10, ¶¶ 50 (referencing that on "several occasions, Draiver represented to Slalom that it had 'cash flow challenges'"), 51 (referencing a communication from Plaintiff to Defendant on July 19, 2023, regarding what Plaintiff "had represented were its cash flow issues"). These were statements made to Defendant before the lawsuit was filed, and Defendant offers no explanation as to why amendments to these paragraphs could not have been made by the

---

[5] The Court does not discuss Defendant's proposed revisions to conform with the Court's motion to dismiss order. ECF No. 72. Those claims are dismissed from this litigation, and an amendment is not necessary to remove those dismissed claims.

amendment deadline.  While Defendant may interpret these communications differently now, this information was known and available long before the amendment deadline.

### 2.    ECF No. 79, paragraphs 56-57

Defendant then seeks to add two new paragraphs, paragraphs 56 and 57.  ECF No. 79 at 11.  Paragraph 56 alleges that the cash-flow issues referenced by Plaintiff were "illusory" and seeks to add a statement "that Draiver 'never had issues' obtaining cash from its parent company, Kavak, a multibillion-dollar company that acquired Draiver in 2023."  *Id*.  Paragraph 57 alleges "[t]he real reason Draiver sought an extended payment term had nothing to do with cash flow, rather, it was to provide additional runway for Draiver to evaluate Slalom's performance before invoices became due, or, as it turned out, manufacture an excuse not to pay Slalom for the work Draiver knew Slalom was going to perform."  *Id*.

In response to Defendant's claim that they learned this information for the first time in July and August 2025, Plaintiff alleges that Defendant's own employees were aware of Plaintiff's ability to request funding from Kavak.  For example, Plaintiff has filed excerpts from the deposition of Carl Newton, who is alleged to be "Slalom's own witness who negotiated the deal" with Plaintiff.  ECF No. 81 at 3; ECF No. 81-2.  That deposition testimony purports to show that back in 2023, Mr. Newton "concedes that, when he was discussing Draiver's cashflow problems (June/July 2023) with Mr. Haque [Plaintiff's former CEO], he was fully aware of Kavak's role in funding Slalom[.]"  ECF No. 81 at 3; ECF No. 81-2 at 3 ("[Mr. Haque] was very clear about going and asking for funding from Kavak to do this next phase").

In response, Defendant states that "even if Slalom knew that Kavak had some role in funding Draiver, Draiver misled Slalom into believing that Draiver had 'cash flow issues' based on its reliance on Kavak."  ECF No. 82 at 2.  But Defendant does not explain its diligence with

regard to its own employee's knowledge dating back to 2023.  It appears that at a minimum, the information relayed to Mr. Newton in 2023 should have led Defendant to diligently inquire into Plaintiff's financial arrangement with its parent company to the extent it would not have independently occurred to Defendant that this was a possibility.

In its reply, Defendant includes a footnote that references that "Slalom reasonably decided not to pursue extensive document discovery from Draiver regarding its (or Kavak's) finances, electing instead to pursue discovery related to Draiver's finances through 30(b)(6) depositions. Although the depositions did not occur until toward the end of the discovery period, in the interim, Slalom diligently sought documents from Draiver relevant to and in preparation for those depositions, which Draiver produced on a rolling basis."  ECF No. 82 at 2 n.1.  But there is no record before the Court of that diligence, such as an interrogatory focused on this issue.

Because earlier inquiry was possible and at least one of Defendant's own key employees had relevant knowledge, deposition testimony taken in August does not demonstrate that despite diligent efforts, Defendant was not able to timely amend these portions of the pleading.  *See, e.g.,* *MidAmerica Div., Inc. v. First Health Grp. Corp.*, No. 23-2551-EFM-RES, 2025 WL 958274, at *3 (D. Kan. Mar. 31, 2025), *objections overruled,* No. 23-2551-EFM-RES, 2025 WL 2230745 (D. Kan. Aug. 5, 2025) (denying a motion to amend where the moving party did not show that information learned at a deposition "could not have been learned far sooner through diligent discovery efforts").

### 3.     ECF No. 79, Counterclaim I: Breach of Contract

At the heart of the proposed amendments to Counterclaim I is a January 10, 2024 email from Plaintiff's CFO Arthur Sindoni to Kevin Burke, another Draiver executive, which attached a spreadsheet entitled "Discrepancies_Slalom[.]"  ECF No. 79 at 15.  Defendant argues that it

"started to learn information supporting its proposed amendment on July 24, 2025, when Draiver produced internal Slack communications," but was not aware of purported inaccuracies in Draiver's recordkeeping until the "Discrepancies_Slalom," spreadsheet was produced on August 15, 2025.  ECF No. 77 at 6-8 (stating Defendant "could not have known on what basis Draiver asserted it could withhold payment . . . until Slalom obtained the above-referenced discovery").

But the record is unclear about what information Defendant had and when regarding this spreadsheet.  In its original motion to amend, Defendant states:

> On January 23, 2024, nine days after Mr. Sindoni asked Mr. Burke to comment on the Discrepancies_Slalom spreadsheet, Slalom sent Draiver a spreadsheet showing that Slalom had been tracking and reporting hours from May 21, 2023, not August 31, 2023.  The Discrepancies_Slalom spreadsheet characterizes 3,081 hours as "impossible."  But if the start date on the spreadsheet is corrected from August 31, 2023 to May 21, 2023, then only one hour, out of the 1,503 Slalom reported, are classified as "impossible."  And the "impossibility" of that one hour assumes a person cannot possibly work more than eight hours in a day.

ECF No. 77 at 7.  Plaintiff cites to this language and argues that "it is undisputed that Slalom received the spreadsheet underlying this theory in January 2024," and failed to timely raise this theory. ECF No. 81 at 2.  Defendant does not clearly address—much less dispute—this argument in its reply.  If it is true that Slalom received the "Discrepancies_Slalom" spreadsheet in January 2024, indicating that Plaintiff categorized some of Defendant's hours as impossible, then Slalom was on notice of the basis for its proposed amendments before this case began.  While later productions of other Excel spreadsheets and deposition testimony may have clarified or expanded upon Defendant's knowledge of this spreadsheet, receipt of this spreadsheet in January 2024, indicating at least one impossibility put Defendant on notice of the basis for its proposed amendments.  Even if Defendant did not receive the spreadsheet in January 2024, communications between the parties at that time put Defendant on notice that Plaintiff "sought out a justification"

not to pay Defendant, which is what Defendant now wants to allege. ECF No. 79 at 15, ¶ 80. In either event, the Court cannot conclude that Defendant was without information that would have allowed for a timely amendment.

Defendant then states when it took the deposition of Plaintiff's current CEO on August 19, 2025, Plaintiff purportedly "acknowledged that Draiver knew, when it terminated Slalom's contract, that it would have to pay Slalom for the work Slalom had performed." ECF No. 77 at 7. Defendant's characterization of this deposition testimony is noticeably without any quotations from this purportedly groundbreaking deposition, and Defendant does not attach any deposition excerpts. Defendant then argues that Plaintiff has "forced Slalom to litigate its entitlement to payment" because "Slalom could not have known on what basis Draiver asserted it could withhold payment, or that its asserted basis was frivolous, until Slalom obtained the above-referenced discovery." ECF No. 77 at 7-8. But again, Defendant has not addressed Plaintiff's allegations that Defendant knew or could have known of this information far earlier.

### 4.    ECF No. 79, Counterclaim IV: Fraud

On September 5, 2025, the Court granted Plaintiff's motion to dismiss Counterclaim IV, which is Defendant's fraud claim. ECF No. 72. Despite that order, Defendant seeks to replead its claim for fraud using some of the original allegations underlying the dismissed claim, altering other paragraphs, and adding new paragraphs.

Defendant's original fraud claim stated "[h]ad Draiver not represented to Slalom its intent to complete the project and make payments, or had Draiver made the true facts known, Slalom would not have agreed to a deferred payment structure." ECF No. 12 at 26. "Slalom's amended fraud claim alleges Draiver falsely represented its cash position in 2023 by stating it was a startup with cash flow issues necessitating a longer payment term, when in reality, Draiver had the backing

of a multi-billion dollar company (Kavak), and knew, but did not disclose, that it would use a longer payment horizon to decide whether to pay Slalom for its work."  ECF No. 77 at 8. Defendant argues that its "amended fraud claim is not based on Draiver's fraudulent misrepresentation of its intent to perform, but rather, its fraudulent misrepresentation of its then-current cash position, which Slalom relied upon to its detriment."  *Id*. at 9.  Defendant states it "could not have discovered Draiver's cash position, or its true intentions, and thus the basis for its amended fraud claim, until it deposed Arthur Sindoni and Zarif Haque in August, 2025."  *Id*.

Defendant's attempt to replead its dismissed fraud claim is not based solely on newly discovered information.  For example, Defendant's proposed amended pleading leaves some of the original paragraphs untouched and merely seeks to change the characterization of other information on which it based its first fraud claim.

As to the newly discovery information, again, Defendant does not clearly argue what new information is the basis for these proposed amendments, including that "Draiver had the financial ability, through its parent company Kavak, to pay for Slalom's services without delay[.]"  ECF No. 79 at 19, ¶ 117.  Instead, Plaintiff has filed deposition excerpts that cast doubt on these assertions.  While Plaintiff's executives were confident about continued support from Kavak, this support still required Plaintiff to explain the need for additional funding and Plaintiff continued to be concerned about cash burn.  ECF No. 81-1 at 2 (responding "Yeah" to a question asking "Kavak, they're not just, like, a bank where you get free money"); *see also id.* ("Kavak never let us down in terms of funding.  The only thing they ask is to give some visibility in terms of what's going to be the cash burn, growth, and where the money is going.").  Again, Defendant has the burden of establishing what specific information it learned in these late depositions and why this information establishes good cause for these untimely amendments.  And Defendant has failed to do so.

### 5.       Paragraph 97, Attorney's Fees

Finally, Defendant seeks to modify paragraph 97 in Counterclaim I to replace the word "fees" with "attorneys' fees" and to add paragraph 96, which is the purported justification for its request for fees.   ECF No. 79 at 17.   Defendant contends "Draiver's continued denial of Counterclaim I (for payment of invoices) has no basis in fact, and is wholly unreasonable and without proper foundation, and is being pursued only to delay payment to Slalom."  ECF No. 77 at 2.  Thus, Defendant contends, Plaintiff's actions constitute bad faith, and Defendant is entitled to attorney's fees.  *Id*. at 6-8.

The Court is unpersuaded that this amendment could not have been added earlier.  As an initial matter, Defendant does not address that its original Counterclaim I requests fees.  ECF No. 12 at 24, ¶ 79 ("Slalom is entitled to damages for breach of contract, including damages, contract and statutory interest, and any other allowable costs, interest and fees.").  Since Defendant does not point to a contractual fee shift provision or statute that would allow for the recovery of attorney's fees for a breach of contract cause of action, presumably Defendant's original request for fees was based on the same or similar allegations regarding Plaintiff's purported bad faith. Regardless, Defendant does not address this issue.

Defendant now claims, "[w]hile Slalom was obviously aware Draiver had not paid the invoices, Slalom could not have known on what basis Draiver asserted it could withhold payment, or that its asserted basis was frivolous, until Slalom" obtained deposition testimony and supplemented document production in July and August 2025.  ECF No. 77 at 7-8.  In its reply, Defendant asserts that it "did not learn that Draiver's asserted basis for denying Slalom's right to payment during this litigation supported an exception to the American Rule until August 2025, after which Slalom promptly moved for leave to amend."  ECF No. 82 at 2.

But Defendant's original Counterclaims were based on the assertion that Plaintiff improperly withheld payments that Plaintiff knew were owed to Defendant. *See, e.g.,* ECF No. 12 at 10, 12 (original Answer referencing that certain invoices are "also due and owning" and an affirmative defense that the "contracts at issue were procured by Draiver's fraud"); *see also id.* at 12 (original Counterclaims stating that "[i]n addition to refusing to pay Slalom amounts even Draiver agrees are owed"). Moreover, Defendant has alleged from the beginning of the litigation that Plaintiff acted in bad faith in refusing to pay its contractual obligations. *See id.* at 13 ("Neither Draiver's pre-suit negotiations nor its commencement of this action is in good faith; this action is an attempted shakedown by Draiver to avoid its obligations and forestall its inevitable payment to Slalom of amounts Draiver owes for work Slalom performed, and which Slalom is contractually entitled to under the parties' agreements."). Defendant's paragraph 96 alleges that it is entitled to attorney's fees because of Plaintiff's "continued refusal to pay Slalom's invoices," ECF No. 79 at 17, but this has been Defendant's assertion since the inception of the litigation. Because of this, Defendant has not established that despite diligent efforts, it was not able to timely amend to change the word "fees" to the phrase "attorney's fees" and to insert a new paragraph explaining its basis for requesting fees.

## IV.    RULE 15(A)(2) STANDARD

Because the Court does not find that Defendant has established good cause pursuant to Rule 16(b)(4) for its untimely request to amend, the Court need not reach whether leave should be granted pursuant to Rule 15(a). But the Court briefly discusses Rule 15(a) because it provides additional reasons for why the Court would not grant leave at this late stage of the litigation.

Plaintiff opposes the Motion on the grounds of undue delay, undue prejudice, and futility of the amendment. *See* ECF No. 81 at 4. While the Court has concerns about the futility of at

least some of Defendant's amendments in light of the District Judge's motion to dismiss order, the Court focuses only on undue delay and undue prejudice.

With regard to undue delay, many of the same reasons discussed above in the Rule 16 analysis weigh in favor of denying the request to amend because of undue delay. *See, e.g., Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (referencing the "rough similarity between the 'good cause' standard of Rule 16(b) and our 'undue delay' analysis under Rule 15").[6] Defendant's delay has become unduly prejudicial to Plaintiff and undue prejudice is the most important factor the Court analyzes when evaluating a motion to amend pursuant to Rule 15. *Minter*, 451 F.3d at 1207. Courts typically find undue prejudice if the proposed amendment affects the opposing parties in terms of preparing their defense. *Id.* Additionally, courts have recognized that a party can be unduly prejudiced when an opposing party moves to amend at a late stage of the case, even when the amendments arise from the same subject matter already pleaded. *See Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 20-2298-JWB-ADM, 2021 WL 533827, at *6 (D. Kan. Feb. 12, 2021) (explaining that defendant "would be unduly prejudiced by the amendment given the late stage of the case and the fact that discovery is now closed"); *see also Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263-JWL, 2008 WL 2622895, at *4 (D. Kan. June 30, 2008) ("This court agrees with the magistrate judge that 'to grant [P]laintiff leave to amend her complaint at such a late point in the case would cause defendant undue prejudice and would likely result in a delay of the trial.'").

---

[6]    Under Rule 15, delay alone is not enough to deny a motion to amend, but at some point, delay becomes undue when it places an unwarranted burden on the Court or when it becomes prejudicial by placing an unfair burden on the opposing party. *See Minter*, 451 F.3d at 1205. In analyzing whether a delay was undue, the Court focuses primarily on the reasons for the delay, and the Court may deny a motion to amend where the moving party lacks an adequate explanation. *See Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

Here, Plaintiff contends that allowing an amendment at this late stage of the case would be prejudicial, primarily because discovery has already closed.  ECF No. 81 at 4.  Plaintiff asserts that it would be deprived "of the opportunity to inquire into the materiality of these representations to Slalom," "[i]t would also preclude discovery into whether the alleged representations are even false," it "would not be able to further inquire into what else Slalom knew . . . about Kavak's role in funding," and "Draiver could not take discovery into whether Draiver really relied on these representations . . . or suffered any real damages[.]"  *Id.*

In response, Defendant argues that the parties have already completed "full discovery regarding Draiver's defenses to Counterclaim I."  ECF No. 77 at 9.  Defendant also states, "Draiver has not clearly articulated what additional discovery it would need from Slalom relating to its amended fraud claim," and contends that because Plaintiff concealed facts, any prejudice could be cured by allowing "limited discovery . . . if necessary."  ECF No. 82 at 3.

The Court is unpersuaded by Defendant's arguments.  While Plaintiff had the opportunity to take discovery on Defendant's existing Counterclaims, Plaintiff has *not* had the opportunity to take any discovery regarding the new factual and legal allegations Defendant seeks to add.  Allowing the proposed amendments at this stage, after discovery has closed, would unduly prejudice Plaintiff.  Even if discovery were reopened, such discovery would further delay this already protracted litigation, which again prejudices Plaintiff.  Moreover, in light of Plaintiff's success in moving to dismiss Defendant's prior fraud claim, Plaintiff may well file another motion to dismiss, which adds only additional delay.  For these reasons, undue delay and undue prejudice to Plaintiff represent separate and additional grounds to deny the Motion.

## V.    CONCLUSION

For the reasons discussed above, Defendant's Motion to Amend is denied.  The Court previously suspended certain case deadlines pending a ruling on this Motion.  Accordingly, the Court imposes the following schedule:

The parties must jointly submit a pretrial order to the Magistrate Judge's chambers via email on or before **November 12, 2025**.  The pretrial conference by telephone is reset for **December 2, 2025, at 10:00 a.m.**  The deadline to file dispositive motions and motions to exclude expert testimony is reset for **January 9, 2026**.  The Court will subsequently set this case for trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Amend Scheduling Order and for Leave to Amend its Counterclaims, ECF No. 77, is **DENIED**.

**IT IS FURTHER ORDERED** that the Court imposes the remaining case-management deadlines set out above.

**IT IS SO ORDERED.**

Dated: October 31, 2025, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge

24